UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:  12-24400-CIV-MORENO**

UNITED STATES OF AMERICA, STATE OF
FLORIDA, and STATE OF FLORIDA
DEPARTMENT OF ENVIRONMENTAL
PROTECTION,

      Plaintiffs,

vs.

MIAMI-DADE COUNTY, FLORIDA,

      Defendant.

_____/

## ORDER GRANTING MOTION TO ENTER CONSENT DECREE

The United States, the State of Florida, and Miami-Dade County engaged in extensive negotiations to arrive at the Consent Decree presented to this Court for approval. The three governmental agencies are intent on the Consent Decree's success in resolving the sewer issues threatening Biscayne Bay National Park. On February 10, 2014, the Court held a hearing on the proposed Consent Decree, where the parties and the Court engaged in a frank discussion on its potential pitfalls and virtues. The Biscayne Bay Waterkeeper, an environmental group intervening in this action, filed a litany of objections to the proposed Consent Decree. This Court overruled the majority of those objections in a Court notice dated March 7, 2014. In that notice, this Court reiterated some of the concerns expressed at the hearing. Namely, the Court believed the Consent Decree could be improved if the County's noncompliance was met with stiffer penalties and by the appointment of a Special Master to oversee implementation of the Consent Decree projects and to ensure the County did not divert funds to other governmental purposes. The Court invited the parties

to respond in writing.  After reviewing the responses, the Court approves the Consent Decree, as amended to include an increase in the stipulated penalties for noncompliance.  Additionally, the Court reserves the right to appoint a Special Master, if the Court deems it necessary at a later juncture.  In lieu of the appointment of a Special Master at this time, the Court is entering a supplemental Order Requiring Status Reports.

THIS CAUSE came before the Court upon Plaintiffs' Motion to Enter Consent Decree **(D.E. No. 86)**, filed on **November 26, 2013**.

THE COURT has considered the motion and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED.  All other motions are DENIED as moot.

### I. Background

Plaintiffs, the United States of America and the State of Florida Department of Environmental Protection filed this case asserting claims against Defendant Miami-Dade County under the Clean Water Act and the Florida Statutes for illegal discharges of pollutants into navigable waters.  The case also claims violations of National Pollutant Discharge Eliminations System permits issued by the Environmental Protection Agency and the Florida Department of Environmental Protection.  Plaintiffs seek the imposition of a civil penalty and injunctive relief to address the endangerment to public health and welfare presented by sanitary sewer overflows ("SSOs") of untreated wastewater, the aged and deteriorated condition of force mains within the Miami-Dade wastewater collection, transmission, and treatment system, including the 54-inch force main that conveys untreated wastewater from the City of Miami Beach under Biscayne Bay to the Central District Wastewater Treatment Plant.

Between 2008 and 2012, there have been 177 overflows of sewage to land and waters totaling over 50 million gallons. Miami-Dade County has also exceeded the permit limits on at least 31 occasions since 2008.

The proposed Consent Decree is intended to supercede the First Partial Consent Decree and the Second and Final Partial Consent Decree entered by the Court in earlier litigation. The proposed Consent Decree includes $1.6 billion of new infrastructure with the bulk of the capital projects (over $1 billion) intended to rebuild and rehabilitate Miami-Dade County's three coastal wastewater treatment plants. The decree also provides for a civil penalty, to be divided between the federal and state governments. It provides for stipulated penalties in the event of noncompliance with the decree's requirements. After the Court's March 7, 2014 notice to the parties, the parties agreed to increase the stipulated penalties for noncompliance.

As noted, the decree provides for capital improvement projects for Miami-Dade's three existing Wastewater Treatment Plants. It also provides for improvements to Capacity, Management, Operation and Maintenance requirements, which the parties agree is necessary to achieve compliance with the Clean Water Act.

## II. Discussion

Entry of a settlement agreement is a judicial act requiring the Court's approval. A court, however, does not have the power to modify a settlement; it may only accept or reject the terms to which the parties have agreed. *Williams v. City of New Orleans*, 694 F.2d 987, 993 (5th Cir. 1982) ("In determining whether to approve or reject a proposed [consent] decree, the district court's function is not to tailor the relief to what it considers necessary, as it might when fashioning relief itself after trial on the merits.").

Courts have delineated the standard of review for agreements settling litigation brought by the United States. "In this Circuit the Court's role is limited at this juncture to determining whether the terms of the consent decree 'are not unlawful, unreasonable, or inequitable.'" *United States v. City of Fort Lauderdale*, 81 F. Supp. 2d 1348, 1350 (S.D. Fla. 1999).

There is a strong presumption in favor of approval of a Consent Decree proposed by the United States, when the Department of Justice and the Environmental Protection Agency have negotiated the terms, since the agencies are equipped, trained, and oriented in the field. *United States v. Cannons Eng'g Corp.*, 720 F. Supp. 1027, 1035 (D. Mass. 1989); *United States v. Bay Area Battery*, 895 F. Supp. 1524, 1528 (N.D. Fla. 1995). Any party objecting to a decree has the heavy burden of demonstrating the decree is unreasonable. *United States v. Chevron, USA*, 380 F. Supp. 2d 1104, 1111 (N.D. Cal. 2005).

Courts reviewing consent decrees to which the United States is a party under environmental laws, have generally limited their role to ensuring there was no evidence of collusion, that all interested persons have reviewed and commented on the proposal, that the governmental agencies have considered and evaluated comments and alternatives, and that the end result appears to be a balanced and workable compromise. *United States v. Hooker Chem. & Plastics Corp.*, 776 F.2d 410, 411-12 (2d Cir. 1985); *United States v. BP Exploration & Oil Co.*, 167 F. Supp. 2d 1045, 1049 (N.D. Ind. 2001) (detailing comments received by the government and indicating that court must determine there is no collusion). The United States, in this case, received approximately seventy-five comments to the Consent Decree, totaling approximately 1,800 pages including exhibits.

-4-

Mindful of these principles, the Court finds the proposed Consent Decree is fair, reasonable, and consistent with the Clean Water Act. To determine the agreement's fairness, the Court must weigh factors such as the good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in litigation if the settlement is not approved. *United States v. Rohm & Haas Co.*, 721 F. Supp. 666, 680-81 (D.N.J. 1989). The Biscayne Bay Waterkeeper has not provided evidence of bad faith. Rather, experienced and well-intentioned environmental attorneys negotiated the Consent Decree, with the assistance of engineers and other professionals with expertise in wastewater collection, transmission, and treatment. Without doubt, litigation would consume considerable resources that could delay implementation of a compliant sewer system and would require the Court to craft a similar remedial plan to that which is already presented in the Consent Decree.

The Consent Decree's reasonableness and consistency with the Clean Water Act is also a factor the Court must consider in granting approval. The Court must decide whether the settlement is in the public interest in evaluating its reasonableness. *Rohm & Haas*, 721 F. Supp. at 687. The Consent Decree's remedy requires the United States Environmental Protection Agency and the Florida Department of Environmental Protection to oversee the County's measures to cure specific violations to the Clean Water Act. Moreover, the Court is entering an additional order requiring status reports to ensure the County is meeting its Consent Decree obligations and the public health and environment are being protected. The decree's remedial scheme is also intended to protect the public health and Biscayne Bay's environment by implementing Capacity, Management, Operation and Maintenance requirements, which the parties agree are necessary to achieve compliance with the Clean Water Act by certain deadlines.

-5-

The Consent Decree also contains a list of capital projects, with detailed schedules to address deficiencies in Miami-Dade's sewer system and treatment plants.  The Consent Decree's projects are frontloaded to prevent urgent problems threatening Biscayne Bay, but the ultimate completion date is in fifteen years, which is a feasible timeframe for completion.  After reviewing the Consent Decree's remedial scheme, the Court agrees it is reasonable and likely to lead to compliance with the Clean Water Act.  The Court approves the Consent Decree and in doing so, relies on the government parties to ensure improvement in water quality, consistent with the goals of the Clean Water Act.

DONE AND ORDERED in Chambers at Miami, Florida, this ___ day of April, 2014.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record

-6-